# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

AMY ROWLAND,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 5:15-cv-61

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge John H. Maclean, ("the ALJ" or "ALJ Maclean") denying her claim for a period of disability, disability insurance benefits, and supplemental security income benefits. Plaintiff urges the Court to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case.

## BACKGROUND

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income benefits on November 16, 2012, alleging that she became disabled on July 1, 2012, due to chronic migraine headaches, as well as back, neck, and feet impairments. (Doc. 9-5, p. 2; Doc. 9-6, p. 6.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On November 6, 2014, ALJ Maclean conducted a video hearing at which Plaintiff, who was represented by Andrew S. Youngman, a non-attorney

representative, appeared and testified in Waycross, Georgia, while the ALJ presided in Savannah, Georgia. (Doc. 9-2, p. 19.) Kenneth L. Bennett, a vocational expert, also appeared at the hearing. (Id.) ALJ Maclean found that Plaintiff was not disabled within the meaning of the Social Security Act. (Id. at p. 28.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 2.)

Plaintiff, born on August 20, 1979, was thirty-five (35) years old when ALJ Maclean issued his final decision. She has a high school education. (Doc. 9-6, p. 7.) Plaintiff's past relevant work experience includes employment as a cashier/checker, nurse assistant, and dispatcher. (Id.)

## DISCUSSION

### I. The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation." 20 C.F.R. §§ 404.1520(c) & 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently

severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's RFC "is an assessment . . . of the claimant's remaining ability to do work despite h[er] impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2012, through the date of ALJ Maclean's decision on January 15, 2015.  (Doc. 9-2, p. 21.)  At Step Two, the ALJ determined that Plaintiff had migraine headaches, obesity, and anxiety/depression, conditions considered "severe" under the severity regulation.  However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment under the Regulations.  (Id. at p. 22)  ALJ Maclean also determined Plaintiff suffers from bilateral foot pain, hypertension, and low back pain, but concluded these

3

conditions were non-severe impairments.  (Id.)  The ALJ found that Plaintiff had the RFC, through the date of his decision, to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff should perform simple, repetitive, and routine work; interact with the public, co-workers, and supervisors occasionally; be required to do no fast-paced work; occasionally flex the neck; should not work around hazardous machinery; can occasionally stoop; and can frequently crawl, kneel, and crouch.  (Id. at p. 24.)  At the next step, ALJ Maclean noted Plaintiff was not able to perform her past relevant work.  (Id. at p. 27.)  The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of cafeteria attendant and cleaner, all of which are light work with a Specific Vocational Preparation of 2, and exist in significant numbers in the national economy.  (Id. at p. 28.)

**II.     Issues Presented**

Plaintiff contends the ALJ erred by failing to rule on her post hearing objections regarding the reliability of the vocational expert's testimony.  (Doc. 11, p. 3.)  Specifically, Plaintiff avers that the vocational expert testified that Plaintiff could perform jobs inconsistent with the limitations noted in her RFC and that the ALJ failed to address this inconsistency.  Next, Plaintiff contends the ALJ erred when he found Plaintiff's migraine headaches to be a "severe impairment," yet did not evaluate that condition under the appropriate listing at Step Three.  Finally, Plaintiff avers the ALJ erred by failing to include any migraine-related limitation in his RFC finding.  (Id. at p. 6.)

**III.    Standard of Review**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan,

936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

**IV.     Whether the ALJ Erred by Failing to Rule on Plaintiff's Post Hearing Objections**

Plaintiff contends that the ALJ committed reversible error by failing to address her post hearing objections regarding the reliability of the vocational expert's testimony. At Plaintiff's hearing, the ALJ posed a hypothetical to the vocational expert involving an individual with Plaintiff's RFC and additional limitations and then asked whether a person with those limitations could perform any jobs. (Doc. 9-2, p. 50.) The vocational expert testified that "such an individual" with Plaintiff's limitations "could work as a cafeteria attendant, DOT number 311.677-010" or as a "cleaner, DOT number 323.687-014[.]"[1] (Id.) The vocational expert

---

[1] Based upon the vocational expert's statement, it is apparent that he relied upon the Dictionary of Occupational Titles ("DOT"), as opposed to the Occupational Outlook Handbook ("OOH"), when formulating his opinion. Accordingly, the Court will presume that the ALJ also based his Step 5 determination upon the DOT, as opposed to the OOH.

5

testified that approximately 100,000 cafeteria attendant and 150,000 cleaner positions exist in that national economy, while 2,000 cafeteria attendant and 3,000 cleaner positions exist in the regional economy. (Id.) The ALJ then asked the vocational expert whether those positions were consistent with the DOT, to which the vocational expert replied in the affirmative. (Id.)

Following the hearing, Plaintiff submitted a post-hearing memorandum to ALJ Maclean, in which she argued that the jobs cited by the vocational expert are inconsistent with Plaintiff's RFC. (Doc. 9-7, p. 3.) Specifically, Plaintiff objected that, "according to the Occupational Outlook Handbook, [cafeteria attendant and cleaner jobs] require more than occasional interaction with coworkers and supervisors[.]" (Id.) Because Plaintiff's RFC requires that Plaintiff interact with the public, co-workers, and supervisors occasionally, Plaintiff averred that the vocational expert's testimony that an individual with Plaintiff's RFC could perform the jobs of cafeteria attendant and cleaner was not reliable. Plaintiff maintains that the ALJ's failure to address her objections regarding the reliability of the vocational expert's testimony requires the Court to remand this case for a proper determination of the evidence. (Doc. 11, p. 5.) Defendant responds that the ALJ's failure to rule upon Plaintiff's post hearing objections resulted in harmless error and that the ALJ's Step 5 determination is supported by substantial evidence. (Doc. 12, p. 10.)

"The Hearings, Appeals and Litigation Manual ("HALLEX") is a policy manual written by the Social Security Administration to provide guidance on procedural matters." Warren v. Astrue, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011). The Eleventh Circuit Court of Appeals "has not decided whether HALLEX carries the force of law." McCabe v. Comm'r of Soc. Sec., 661 F. App'x 596, 599 (11th Cir. 2016) (citing George v. Astrue, 338 F. App'x 803, 805 (11th Cir. 2009) (calling the assumption that HALLEX carries the force of law "a very big

6

assumption")). "While the Eleventh Circuit has not specifically addressed whether the HALLEX creates judicially-enforceable rights, '[w]hat is certain, however, is that—if it does—remand is mandated only when the ALJ violates procedures in the HALLEX.'" Warren, 830 F. Supp at 1372 (citing Tarver v. Astrue, No. CA 10-0247-C, 2011 WL 206217, at *3 (S.D. Ala. Jan 21, 2011)). Nonetheless, even if the ALJ violates HALLEX procedures, "remand is required only . . . if the violation prejudices the claimant." Weber v. Comm'r of Soc. Sec., No. 2:16-cv-25-FtM-CM, 2017 WL 727765, at *3 (M.D. Fla. Feb. 24, 2017) (citing Cohan v. Comm'r, Soc. Sec. Admin., No. 6:10–cv–719–Orl–35DAB, 2011 WL 3319608, at *5 (M.D. Fla. July 29, 2011)). See e.g., Carroll v. Comm'r of Soc. Sec., 453 F. App'x 889, 892–93 (11th Cir. 2011) (finding that agency's violation of its own governing rules must result in prejudice to support remand for agency noncompliance).

Here, the parties do not dispute that the ALJ violated HALLEX Rule I-2-6-74, which requires that "the ALJ must . . . rule on any objection [to the vocational expert's testimony] on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." I-2-6-74. Testimony of a Vocational Expert, Social Security Administration, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-74.html (last updated June 6, 2016). However, the parties do dispute whether the ALJ's procedural violation resulted in prejudice to Plaintiff. Plaintiff argues that the ALJ's failure to examine her objections, which highlighted the disparity between the OOH definition of "food and beverage serving and related workers" and "maids and housekeeping cleaners," and Plaintiff's RFC, "directly affect[ed] his Step 5 finding that there are other jobs Plaintiff could perform[.]" (Doc. 11, p. 5.)

However, Defendant maintains that the ALJ's failure to examine the OOH—and the job descriptions contained within that source—after the hearing did not prejudice Plaintiff because

the ALJ properly relied upon only the DOT and the vocational expert's testimony. Defendant submits that the OOH defines a wider array of "cafeteria attendant" and "cleaner" jobs than the DOT jobs referenced by the vocational expert at the hearing, and, as a result, the ALJ's consideration of that source would have been unnecessary and unrelated to the narrow subset of DOT-defined "cafeteria attendant" and "cleaner" jobs which were factored into the ALJ's Step Five Determination at the hearing. (Doc. 12, p. 11.) Accordingly, Defendant maintains that ALJ Maclean's consideration of the OOH would not have changed his Step Five finding.

Accordingly, the Court must determine if the ALJ's failure to consider the OOH description of "food and beverage serving and related workers" and "maids and housekeeping cleaners," resulted in prejudice to Plaintiff. Plaintiff cites no authority for the proposition that the ALJ is bound by the OOH or should have addressed that source when making his Step 5 determination. See Palomino v. Colvin, No. ED CV 14-212-SP, 2015 WL 2409881, at *6 (C.D. Cal. May 20, 2015) (finding inapposite plaintiff's contention that the vocational expert's testimony conflicted with the OOH, as "the OOH is one of several competent sources of job information" and that the Commissioner's regulations "do not provide that the OOH is the controlling source") (emphasis supplied). The ALJ relied on the testimony of a vocational expert who tailored his opinions to a narrow set of DOT-defined jobs. Plaintiff was not prejudiced simply because the ALJ did not also consult the OOH in response to Plaintiff's post hearing objections.

Here, the vocational expert testified that Plaintiff could perform "cafeteria attendant" and "cleaner" jobs as defined by the DOT. While Plaintiff contends that the ALJ should have based his Step Five analysis on a combination of the DOT's description of "cafeteria attendant" and "cleaner" jobs as well as the OOH's description of "food and beverage serving and related

workers" and "maids and housekeeping cleaners," the two sources address different positions, as evidenced by the different titles of those positions. Further, as demonstrated by the vocational expert's testimony at the hearing and the ALJ's Step Five analysis, ALJ Maclean relied upon the DOT and the vocational expert's testimony regarding a DOT-defined set of jobs. Accordingly, analysis of the OOH and consideration of jobs with different titles and different requirements would have been unrelated to the ALJ's specific finding as it pertained to Plaintiff's ability to perform the "cafeteria attendant" and "cleaner" jobs as defined by the DOT. As a result, ALJ Maclean's failure to address Plaintiff's objections was harmless error, and the Court need not remand this case.

**V.     Whether the ALJ Failed to Properly Consider Plaintiff's Migraines at Step Three**

Next, Plaintiff asserts the ALJ failed to determine whether Plaintiff's migraine headaches met or equaled a listed impairment. (Doc. 11, pp. 9–10.) Plaintiff maintains that the ALJ should have evaluated her migraine headaches in accordance with Listing 11.03 for non-conclusive epilepsy and that his failure to do so resulted in reversible error. Defendant responds that the ALJ was not required to specify which listings he considered in his decision and that substantial evidence supports his conclusion that "[c]laimant's physical impairments do not meet or equal any of the relevant listings." (Doc. 12, pp. 3, 8; Doc. 9-2, p. 22.)

If the claimant has a severe impairment or combination of impairments, the ALJ must then determine whether the claimant's impairment meets or equals one of the impairments listed in the severity regulation of the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips, 357 F.3d at 1238. The claimant bears the burden of proving her impairment meets or equals one of the Listings.

Reynolds-Buckley v. Comm'r of Soc. Sec., 457 F. App'x 862, 863 (11th Cir. 2012). If the claimant's impairment meets or equals one of the Listings, the ALJ will find the claimant is disabled. 20 C.F.R §§ 416.920(a)(4)(iii) and (d). "While the ALJ is required to consider the Listing of Impairments in making a decision at step three," he is not required to "'mechanically recite' the evidence or listings [he] has considered." Flemming v. Comm'r Soc. Sec. Admin, 635 F. App'x 673, 676 (11th Cir. 2015) (citing Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986)). "There may be an implied finding that a claimant does not meet a listing." Id. "Therefore, in the absence of an explicit determination, [the Court] may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing." Id. Accordingly, to determine if an ALJ considered a Listing, the Court must review the ALJ's findings and determine if there is an implied finding that Plaintiff did not meet or equal a listing. Listing 11.03 requires that Plaintiff experience "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." 20 C.F.R. Pt. 404, Supbt. P, App.1 § 11.03.

Here, the ALJ's failure to discuss Listing 11.03 at Step Three does not show that he did not consider that listing. First, the ALJ specifically stated that, as to Plaintiff's alleged physical impairments, he considered the objective evidence and evaluated whether any medical source had mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. (Doc. 9-2, p. 22.) The ALJ then found that the record contains no evidence supporting Plaintiff's contention that any of her physical impairments—which includes her migraine headaches—meet or equal "any of the relevant listings." (Id.) The remainder of the ALJ's decision reflects that he considered evidence of Plaintiff's migraine headaches. First, the ALJ noted that "claimant experiences frequent migraine headaches . . .

10

[which are] associated with nausea, vomiting, photophobia, and sonophobia." (Id. at p. 21.) The ALJ then extensively reviewed Plaintiff's medical history, which included her treatment for migraine headaches, and implicitly found that her migraine headaches do not meet or equal any listed impairment, including Listing 11.03.

The ALJ's evaluation of Plaintiff's credibility further demonstrates that he implicitly found that Plaintiff's migraine headaches did not meet or equal Listing 11.03. For example, ALJ Maclean noted that Plaintiff's alleged limitations are not consistent with her activities of daily living, which includes attending to her personal care, laundry, occasional shopping, driving short distances, some housework, recreational fishing, and walking and jogging for weight loss. (Id.) For Plaintiff to show that her impairment matches a listing, it must meet all of the specified medical criteria. If an impairment manifests only some of those criteria, no matter how severely, it does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The facts cited in the ALJ's decision pertaining to Plaintiff's credibility support the proposition that Plaintiff's migraine headaches do not "significant[ly] interfere[ ] with activity during the day," 20 C.F.R. Pt. 404, Supbt. P, App.1 § 11.03, and, therefore, do not meet or equal Listing 11.03. Accordingly, a review of the record and the ALJ's decision demonstrates that the ALJ sufficiently considered Plaintiff's migraine headaches in combination with her other impairments, and implicitly determined that her condition does not meet or equal Listing 11.03. Accordingly, substantial evidence supports the ALJ's implicit determination that Plaintiff did not meet or equal Listing 11.03, and this enumeration of error is without merit.

## VI. Whether the ALJ Erred by Failing to Include Plaintiff's Migraine-related Limitations in the RFC Finding

Despite finding Plaintiff's migraine headaches were a "severe impairment," the ALJ did not include that limitation in his RFC finding. Plaintiff contends that, by definition, a "severe"

11

impairment limits a claimant's ability to perform basic work activities. (Doc. 11, p. 12 (citing 20 C.F.R. § 404.1521(a).) Accordingly, Plaintiff maintains that the ALJ's failure to include migraine headaches as a limitation in his RFC determination is inconsistent with his finding that she suffers from a severe impairment. (Id.) As a result, Plaintiff argues that the ALJ committed reversible error and that the Court should remand her case for a proper determination of Plaintiff's RFC.

Defendant maintains ALJ Maclean's finding that Plaintiff could perform a range of light work, with additional limitations, is based on a review of the entire record and in consideration of Plaintiff's impairments as a whole. (Doc. 12, p. 3.) Defendant states that the ALJ properly discounted the credibility of Plaintiff's statements concerning her migraine headaches and that Plaintiff failed to show her migraine headaches resulted in any work-related limitations beyond those the ALJ cited in his RFC determination. (Id. at pp. 3–4, 7–8.) Accordingly, Defendant contends substantial evidence supports the ALJ's finding that Plaintiff's migraine headaches do not impede her ability to perform light work. (Id. at p. 8.)

In finding that Plaintiff had the RFC to perform work at the light exertional level, with certain exceptions, ALJ Maclean stated he considered all symptoms and the extent those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. (Doc. 9-2, p. 24.) While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ did not find Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms to be "entirely credible[.]" (Id. at p. 25.) As to Plaintiff's credibility concerning her claim of debilitating migraine headaches, the ALJ found Plaintiff's allegations to be greatly exaggerated. Plaintiff stated to consultative examiners that she has fifteen (15) migraines per

month that each last between 4–5 days. (Id.) As the ALJ noted, Plaintiff's allegations are mathematically impossible, as there are not 60–75 days in a single month. Further, Plaintiff reported to her neurologist that she has headaches only 2–3 times per week. The ALJ further noted that Plaintiff's treatment regimen is inconsistent with her allegations. (Id.) For example, Plaintiff originally told doctors that she had experienced migraines since she was twelve (12) years old, but reported to the consultative examiner that she first experienced migraines in 2006. (Id.)

As to the debilitating nature of Plaintiff's migraine headaches, the ALJ noted that Plaintiff stated she did not take any medications at a consultative examination in 2014, despite the fact that she was prescribed several medications for headaches. (Id.) The ALJ further noted that Plaintiff's alleged limitations are not consistent with her activities of daily living, which includes attending to her personal care, laundry, occasional shopping, driving short distances, some housework, recreational fishing, and walking and jogging for weight loss. (Id.) Finally, looking to the medical evidence, ALJ Maclean accorded little weight to the opinion of Plaintiff's neurologist, Dr. Harsh Singh, that Plaintiff would have significant difficulties concentrating due to migraines. (Id. at p. 26.) Dr. Singh made this determination despite the fact that he had not seen Plaintiff in over two years, and the ALJ noted that his determination appeared to largely be a reiteration of Plaintiff's allegations and was not based on any objective medical findings. (Id.)

ALJ Maclean looked at the objective medical evidence and other evidence of record, as well as Plaintiff's subjective allegations in reaching his conclusion that Plaintiff was capable of performing light work, with certain limitations. The substantial evidence above supports the ALJ's determination of Plaintiff's RFC, despite any incidence of migraine headaches. This enumeration of error is without merit.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 10th day of March, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA